UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Craig Ninja Antonio Brewton, | ) | C/A No. 7:25-cv-10435-RMG-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Brady Branson, III, Marcus L. White, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court in this case are Plaintiff's Motions for Summary Judgment (ECF Nos. 46; 47), Defendants' Motion for Summary Judgment (ECF No. 49), and Plaintiff's "Motion to add Defendants [and] correct violations for filings of a 1983 [and] 1985 civil claim with amended complaint" which is construed as a Motion to Amend/Correct the Complaint (ECF No. 61).  Proceeding *pro se* and *in forma pauperis*, Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights against the above-named Defendants.[1]  Plaintiff is a pretrial detainee incarcerated at the Spartanburg County Detention Center ("the Detention Center").  ECF No. 1 at 2, 4.  Pursuant to 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases filed under § 1983 and make recommendations to the district

---

[1] Plaintiff's Complaint named the following Defendants: Brady Branson, III ("Branson"), Marcus L. White ("White"), Sheriff Chuck Wright ("Wright"), Spartanburg County Sheriff's Office ("the Sheriff's Office"), the City of Spartanburg (the "City"), Spartanburg County (the "County"), the State of South Carolina (the "State"), the Spartanburg County Detention Center (the "Detention Center"), and Judge Mark Hayes, II ("Judge Hayes").  ECF No. 1.  By Order dated October 14, 2025, the Sheriff's Office, the City, the County, the State, the Detention Center, and Judge Hayes were all dismissed from this action.  ECF No. 26 (adopting the Report and Recommendation at ECF No. 12).

1

court. For the reasons below, Defendants' Motion should be granted, and Plaintiff's Motions should be denied.

## BACKGROUND

**Procedural History**

Plaintiff commenced this action by filing a Complaint on the standard form seeking relief pursuant to 42 U.S.C. § 1983. ECF No. 1. On October 13, 2025, Defendants Branson and White filed a Motion to Dismiss and an Answer to the Complaint. ECF Nos. 21; 22. On October 27, 2025, Plaintiff filed a Response in Opposition to the Motion to Dismiss, to which Defendants filed a Reply. ECF Nos. 28; 29. By Order dated December 15, 2025, Judge Gergel granted in part and denied in part the Motion to Dismiss. ECF No. 40 (adopting Report and Recommendation at ECF No. 36). That Order granted the Motion as to Plaintiff's claims against Defendants in their official capacities and denied the Motion as to Plaintiff's claims against Defendants in their individual capacities. *Id*. Accordingly, only Plaintiff's individual capacity claims against Branson and White remain pending in this action.

On February 9, 2026, Plaintiff filed a Motion for Summary Judgment ("Plaintiff's First MSJ"). ECF No. 46. On February 11, 2026, Plaintiff filed a Second Motion for Summary Judgment ("Plaintiff's Second MSJ"). ECF No. 47. Both of Plaintiff's Motions are comprised of a single page and, with only a few minor differences in wording, are almost identical. Defendants filed a consolidated Response in Opposition to both Motions on February 23, 2025. ECF No. 53. Plaintiff filed a Reply on March 6, 2026. ECF No. 57.

On February 13, 2026, Defendants filed a Motion for Summary Judgment. ECF No. 49. On February 17, 2026, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (a "*Roseboro* Order"), advising Plaintiff of the motion for summary judgment

procedures and the possible consequences if he failed to respond adequately.  ECF No. 51.  On February 23, 2026, Plaintiff filed a Response in Opposition to the Motion for Summary Judgment.  ECF No. 54.  Defendants filed a Reply on March 2, 2026.  ECF No. 55.

On March 11, 2026, Plaintiff filed a Motion to Amend/Correct the Complaint.  ECF No. 61.  Defendants have not filed a Response and the Response is not due until March 25, 2026.  However, the Court finds that a Response is not necessary at this time.  Accordingly, this matter is ripe for review.

**Factual Allegations[2]**

Plaintiff makes the following allegations in the Complaint.  ECF No. 1.  Plaintiff alleges that, on October 18, 2023, White pulled up beside Plaintiff at a gas station with the intent to harass or arrest Plaintiff.  *Id.* at 6.  Plaintiff "pulled off to avoid contact or harassment."  *Id.*  White followed Plaintiff and turned on his lights.  *Id.* at 6–7.  Plaintiff pulled over, only two minutes or less from the store, at his grandmother's house, so he could have a witness.  *Id.* at 7.  Branson got out of the car and, while Plaintiff was trying to talk, sucker punched Plaintiff and grabbed him by the neck collar.  *Id.*  Branson and White slammed Plaintiff to the ground.  *Id.*  Plaintiff alleges he was "leg swepped [sic] and slammed to the ground," after which both officers got on top of him, touched him, and searched him "improperly never finding drugs."  *Id.* at 5.  Plaintiff was never told why he was getting assaulted.  *Id.*  Plaintiff contends he was not aggressive or trying to run.  *Id.*  The officers arrested Plaintiff, "taking a chance to ruff [sic] [Plaintiff] up and take out their aggression on [his] broken body."  *Id.*

---

[2] The Court does not include Plaintiff's allegations against the Defendants who have been dismissed from this action.

For his injuries, Plaintiff contends that handcuffs were placed on him "ver[y] tight" and "causing great pain." *Id.* at 7.  Plaintiff contends he was leg "swepped [sic]" to the ground causing injuries to his hips and hurt his back.  *Id.*  Plaintiff contends he was taken to the doctor and received "pills" and a shot in his "hip/butt for the pain."  *Id.*  For his relief, Plaintiff seeks money damages. *Id.*

**Plaintiff's Pending State Court Charges**

The Court takes judicial notice[3] that Plaintiff was charged with failure to stop for a blue light at case number 20232580132276 (indictment number 2024GS4201131) arising from the incident in question, which remains pending against him.  *See* Spartanburg County Seventh Judicial Circuit Public Index, available at https://publicindex.sccourts.org/Spartanburg/ PublicIndex/PISearch.aspx (search by case number listed above) (last visited March 11, 2026). Plaintiff has also been charged with the following additional crimes, which remain pending in the Spartanburg County Court of General Sessions: (1) trafficking in cocaine at case number 2022A4210101970 (indictment number 2023GS4201852); (2) possession of a weapon during violent crime at case number 2022A4210101971 (indictment number 2023GS4201852A); (3) certain drug charges at case number 2022A4210205673 (indictment number 2023GS4201850); (4) filing a false police report of a felony violation at case number 2024A4210201433 (indictment number 2024GS4203081); and (5) filing a false police report of a felony violation at case number 2024A4210201434 (indictment number 2024GS4203082).  *Id*. (search by listed case numbers).

---

[3] *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

**Plaintiff's Other Federal Court Cases**

This is one of four actions filed by Plaintiff in this Court within the span of several months, with many of the claims in the cases related to the same underlying incidents. In December 2024, Plaintiff filed an action—at case number 24-cv-7655—pursuant to § 1983 against various corrections officers at the Detention Center asserting claims of excessive force and denial of medical care. That action remains pending.

In January 2025, Plaintiff filed an action—at case number 25-cv-0226—pursuant to § 1983 against various corrections officers at the Detention Center asserting claims of excessive force and denial of medical care. Plaintiff filed a Notice of Voluntary Dismissal on January 27, 2025, and that action was closed.

In February 2025, Plaintiff filed an action—at case number 25-cv-1073—pursuant to § 1983 against various Spartanburg County entities and officials, including Officers Smith and White, asserting claims of unlawful arrest, false imprisonment, and excessive force arising from Plaintiff's arrest on September 19, 2022. That action remains pending, although the undersigned has recommended that Defendants' Motion for Summary Judgment be granted in that case.

In August 2025, Plaintiff filed the present action—at case number 25-cv-10435—pursuant to § 1983 against certain sheriff's deputies asserting claims of excessive force and denial of medical care.

## STANDARD OF REVIEW

**Liberal Construction of *Pro Se* Pleadings**

Because Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the *pro se*

pleading remains subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

6

325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Claims under § 1983**

The Complaint is filed pursuant to § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

**Excessive Use of Force**

Plaintiff's excessive force claim is governed by the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original).  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham*, 490 U.S. at 396.  "This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders."  *Terrell v. City of Spartanburg*, C/A No. 7:17-cv-02738-BHH-JDA, 2018 WL 4782334, at \*5 (D.S.C. Sept. 12, 2018).  However, "[t]he Fourth Amendment bars police officers from using *excessive* force to effectuate a seizure." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (emphasis added).  "Courts evaluate a claim of excessive force based on an 'objective reasonableness' standard."  *Id.* (quoting *Graham*, 490 U.S. at 399).  "Courts

are to carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 884–85 (citations and internal quotation marks omitted). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tenn. v. Garner*, 471 U.S. 1, 8–9 (1985)). Therefore, the three factors to analyze, established in *Graham v. Connor*, are: (1) "the severity of the crime"; (2) "whether the suspect posed an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest." *Id.* The United States Court of Appeals for the Fourth Circuit has held that, among these *Graham* factors, the second—whether the suspect poses an immediate threat to the safety of the officers or others— is "the most important." *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024). "[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

"An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in

9

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397; *see Stanton*, 25 F.4th at 233 ("In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment."). Ultimately, "the question of whether the officer's actions were reasonable is a question of pure law." *Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022); *see Scott v. Harris*, 550 U.S. 372, 381 n.8. (2007).

## DISCUSSION

**The Undisputed Record Evidence**

In support of their Motion for Summary Judgment, Defendants have filed the Affidavits of White (the "M. White Affidavit") (ECF No. 49-2), Branson (the "Branson Affidavit") (ECF No. 49-4), David Littleton (the "Littleton Affidavit") (ECF No. 49-5), and Kathy White (the "K. White Affidavit") (ECF No. 49-7). Attached to the M. White Affidavit are two Uniform Traffic Tickets, both dated October 18, 2023, charging Plaintiff with driving under suspension and failure to stop for a blue light. ECF No. 49-3. Attached to the Littleton Affidavit are two video recordings—one of White's body worn camera ("White BWC") and the other of Branson's body worn camera ("Branson BWC")—both from the day of Plaintiff's arrest and submitted to the Court via a USB flash drive. ECF No. 49-6. Attached to the K. White Affidavit are Plaintiff's medical records filed under seal pertaining to the date of Plaintiff's arrest. ECF No. 49-8.

Plaintiff has not filed or identified any evidence or documents in support of his own Motions or in Opposition to Defendants' Motion.

The following facts are undisputed based on the record evidence noted above. On October 18, 2023, White, who was accompanied by Sheriff's Office Chaplain Walter Davis, was conducting routine patrol near East Blackstock Road and Old Anderson Mill Road in Spartanburg

10

County.  Aff. M. White ¶ 2.  Shortly before 2:00 p.m., White observed a gold Nissan Rogue enter the parking lot of the Citgo Gas Station at the corner of East Blackstock Road and Anderson Mill Road.  *Id*. at ¶ 3.  The driver, later identified as Plaintiff, was not wearing a seatbelt.  *Id*.  Therefore, White attempted to initiate a traffic stop for the seatbelt violation.  *Id*. at ¶ 4.  However, when White initiated the stop, Plaintiff drove away and proceeded onto Old Anderson Mill Road at a high rate of speed.  *Id*. at ¶¶ 4–5.  White activated his blue lights and siren and followed Plaintiff, but Plaintiff did not stop.  *Id*. at ¶ 5.

White notified dispatch that the vehicle was failing to stop and advised that he could not engage in a high-speed pursuit if it became necessary given the Chaplain's presence in the vehicle. *Id*. at ¶ 7.  Branson, who was nearby, responded and briefly took over the pursuit.  *Id*. at ¶ 8; Aff. Branson ¶ 4.  By the time Branson caught up to Plaintiff and while White was still behind them, Plaintiff pulled into the driveway of a residence on Bethlehem Church Road, later determined to be Plaintiff's grandmother's home.  Aff. Branson ¶ 6; Aff. M. White ¶ 9.  As Branson and White pulled into the driveway and exited their patrol vehicles, Plaintiff exited his vehicle and began yelling at the Deputies.  Aff. Branson ¶ 6, Aff. M. White ¶ 9; Aff. Littleton, Ex. A, White BWC. Branson issued multiple verbal commands for Plaintiff to remain inside his car, which Plaintiff ignored.  Aff. Branson ¶ 9.  Branson smelled a strong odor of marijuana emanating from Plaintiff and his vehicle.  *Id*.  Based on Plaintiff's failure to stop for blue lights, his noncompliance with verbal commands, and the smell of marijuana, the Deputies attempted to place him under arrest. *Id*. at ¶ 10.

Branson first made contact with Plaintiff and attempted to gain control of Plaintiff's hands to place him in handcuffs, but Plaintiff resisted and continued yelling at the Deputies.  *Id*.  Branson and White used soft hand control techniques to attempt to gain compliance.  *Id*. at ¶ 11.; Aff.

11

Littleton, Ex. A, Branson BWC. When Plaintiff continued to resist, White employed a leg sweep maneuver to take him to the ground. Aff. M. White ¶ 14. Plaintiff continued resisting on the ground, and both Deputies gave repeated verbal commands for him to stop resisting and place his hands behind his back. *Id*.; Aff. Branson ¶ 11; Aff. Littleton, Ex. A, Branson BWC. During the struggle, Plaintiff grabbed White's vest and knocked his body-worn camera loose. Aff. M. White ¶ 14. The Deputies secured Plaintiff in handcuffs in less than one minute. *Id*. at ¶ 15; Aff. Branson ¶ 12; Aff. Littleton, Ex. A, Branson BWC.

After being handcuffed, Plaintiff continued yelling loudly and attempted to kick Branson. Aff. Branson ¶ 13; Aff. Littleton, Ex. A, Branson BWC. Branson controlled Plaintiff's leg to prevent further kicking. Aff. Branson ¶ 13; Aff. Littleton, Ex. A, Branson BWC. Despite repeated efforts to calm him, Plaintiff remained verbally agitated. Aff. M. White ¶ 16; Aff. Branson ¶ 13; Aff. Littleton, Ex. A, Branson BWC. During this time, Plaintiff's grandmother came onto the porch, and Plaintiff repeatedly yelled for her to call an ambulance. Aff. M. White ¶ 17; Aff. Branson ¶ 14; Aff. Littleton, Ex. A, Branson BWC, White BWC.

White and Branson conducted a pat down search of Plaintiff incident to arrest to ensure that he did not have any contraband, during which Plaintiff accused them of touching him inappropriately. Aff. M. White ¶ 18; Aff. Branson ¶ 15; Aff. Littleton, Ex. A, Branson BWC, White BWC. After approximately ten minutes, White and Branson placed Plaintiff in the back of Deputy Branson's patrol vehicle. Aff. M. White ¶ 19; Aff. Branson ¶ 15; Aff. Littleton, Ex. A, Branson BWC, White BWC. Plaintiff was transported to Spartanburg Regional Hospital after complaining of injury. Aff. Branson ¶ 16.

Upon arrival at Spartanburg Regional Hospital, Plaintiff was evaluated. Aff. K. White, Ex. A. He complained of neck, wrist, and shoulder pain. *Id*. Diagnostic imaging of Plaintiff's

12

shoulders revealed no acute injury, fracture, or dislocation and showed only chronic findings consistent with prior medical history. *Id*. Plaintiff did not require further imaging or treatment and was discharged in stable condition. *Id*. Following Plaintiff's hospital visit, White issued Uniform Traffic Tickets to Plaintiff for Failure to Stop for a Blue Light and Driving Under Suspension and Plaintiff was booked into the Detention Center. Aff. M. White, ¶ 20, Ex. A.

On October 20, 2023, Plaintiff returned to Spartanburg Regional Hospital complaining of neck, wrist, and ankle pain. Aff. K. White, Ex. A. X-rays of Plaintiff's cervical spine, wrists, and right ankle were taken and revealed no fractures, dislocations, or other acute injuries. *Id*. Plaintiff was again discharged in stable condition with no findings of injury. *Id*. Plaintiff's indictment, number 2024-GS-42-01131, for Failure to Stop for a Blue Light arising out of the events on October 18, 2023, remains pending.

**Defendants' Motion for Summary Judgment**

Defendants argue they are entitled to summary judgment because the undisputed evidence shows that Defendants' use of force was objectively reasonable and did not violate Plaintiff's constitutional rights, both Defendants are entitled to qualified immunity, and punitive damages are not recoverable. ECF No. 49-1 at 5. The Court will address the relevant arguments in turn below.

### *Excessive Use of Force Claim*

Defendants argue the uncontradicted evidence shows that Branson and White used objectively reasonable force while attempting to apprehend and arrest Plaintiff. ECF No. 49-1 at 5. The Court agrees and finds that Defendants are entitled to summary judgment as to Plaintiff's excessive force claim.

In the Complaint, Plaintiff alleges that Branson sucker punched him and grabbed him by the neck collar; Branson and White slammed him to the ground; he was "leg swepped [sic]"; and

after he was taken to the ground, both officers got on top of him and touched him inappropriately. ECF No. 1 at 7.  Plaintiff alleges that he suffered injuries to his hip and back.  *Id.*

The Fourth Amendment "prohibits police officers from using force that is 'excessive' or not 'reasonable' in the course of making an arrest." *Meyers v. Balt. Cnty., Md.*, 713 F.3d 723, 732 (4th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  "Claims that police officers used excessive force to seize a citizen . . . are cognizable under § 1983." *Hembree v. Branch*, C/A No. 3:17-cv-485-FDW, 2018 WL 4283060, at *3 (W.D.N.C. Sept. 7, 2018) (citing *Graham*, 490 U.S. 386).  "Whether an officer has used excessive force depends on 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (quoting *Graham*, 490 U.S. at 396).  Police officers may "exert some physical force to effectuate the order," and, unless the force is excessive, they do not violate the Fourth Amendment in doing so.  *Coleman v. Calvert Cnty.*, C/A No. GJH-15-cv-920, 2016 WL 5335477, at *4 (D. Md. Sept. 22, 2016).  Additionally, "[a]s a general rule, officers conducting an arrest or investigatory stop are authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the arrest and/or stop." *Newman v. Green*, 198 F. Supp. 2d 664, 668 (D. Md. 2002) (citing *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995)).  "A claim of excessive force by police during an arrest is properly analyzed under the Fourth Amendment by a determination of whether the officer's conduct was 'objectively reasonable.'" *El v. Wean*, C/A No. 2:16-cv-01152-DCN, 2017 WL 3910864, at *3 (D.S.C. Sept. 7, 2017) (citations omitted).

14

As noted previously, the three factors to analyze, established in *Graham v. Connor*, are: (1) "the severity of the crime"; (2) "whether the suspect posed an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest." *Graham*, 490 U.S. at 396.  Here, in light of the *Graham* factors and in consideration of all of the facts and circumstances surrounding Defendants' use of force, the Court finds the officers' actions were objectively reasonable.  The first *Graham* factor—the severity of the crime—at first blush appears to weigh in favor of Plaintiff.  White explained in his Affidavit that he initiated a traffic stop because he observed that Plaintiff was not wearing a seatbelt.  Aff. M. White ¶ 2–4. Plaintiff's seatbelt infraction is a minor traffic violation, which the Fourth Circuit has explained weighs in Plaintiff's favor under the first *Graham* factor.  *See, e.g.*, *Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016) ("When the offense committed is a minor one, we have found that the first *Graham* factor weighs in plaintiff's favor." (cleaned up) (citations omitted)); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) (minor offenses weigh against use of force); *Brooks v. Zorn*, C/A No. 2:22-cv-00739-DCN-MHC, 2024 WL 4186661, at *10 (D.S.C. May 24, 2024) (noting "a minor traffic violation that is a misdemeanor in South Carolina" weighs against the use of force), *R&R adopted by* 2024 WL 3982872 (D.S.C. Aug. 29, 2024).  However, courts have also noted that "[e]vading a police officer cannot be dismissed as a minor traffic violation."  *Sherrill v. Cunningham*, C/A No. JKB-18-cv-476, 2019 WL 6067286, at *7 (D. Md. Nov. 15, 2019) (citations omitted).  Here, Plaintiff fled after White initiated a traffic stop to address the seatbelt violation.[4] "Such a crime [of fleeing police or failing to stop for a blue light], though not a severe, violent felony, is more than simply a 'minor' offense."  *Id*. (citations omitted); *see also Harrell v. Purcell*,

---

[4] This consideration—Plaintiff's failure to stop for police when a traffic stop was initiated resulting in failure to stop for blue light charges—collapses into the third factor—whether Plaintiff actively resisted.

15

236 F. Supp. 2d 526, 532 (M.D.N.C. 2002) (noting that failure to stop after pursuit with blue lights can weigh in favor of use of force). Thus, the Court finds the first *Graham* factor is neutral and does not weigh either for or against the use of force.

The second and third *Graham* factors consider whether the suspect posed an immediate threat to the safety of the officers or others and whether he was actively resisting arrest or attempting to evade arrest by flight. In this case, these two factors are intertwined. After White initiated a traffic stop by turning on his blue lights, Plaintiff refused to stop and, instead, sped off in his vehicle. Once Plaintiff did stop, White and Branson instructed him to stay in his vehicle, but Plaintiff refused their commands and excited his vehicle. Plaintiff was combative and refused Defendants' commands. White then employed a "leg sweep" maneuver to take Plaintiff to the ground, after which Defendants placed Plaintiff in handcuffs. Plaintiff's conduct of fleeing police, refusing commands, and engaging in combative behaviors towards police weigh in favor of some use of force. For these reasons, the Court finds that Defendants were justified in using some degree of force in subduing Plaintiff.

Further, the degree of forced used was reasonable. White used a leg sweep maneuver to take Plaintiff to the ground, both officers used their hands to physically detain Plaintiff, and the officers placed handcuffs on Plaintiff's hands. This amount of force was reasonable under the circumstances. *See, e.g., Moore v. Barnes*, 802 F. Supp. 3d 792, 843 (E.D.N.C. 2025) (finding an officer's use of a leg sweep did not constitute excessive force when the suspect was noncompliant and actively resisting a search); *Monroe v. Riverside Reg'l Jail*, C/A No. 1:21-cv-524-TSE-TCB, 2022 WL 433130, at *9 (E.D. Va. Feb. 11, 2022) (finding an officer's use of a leg sweep was reasonable where an individual refused to comply with commands, refused to be handcuffed, and attempted to pull away from officers attempting to restrain him with handcuffs); *Saidi v. Randall*,

16

C/A No. CCB-19-1866, 2021 WL 781364 *4 (D. Md. Mar. 1, 2021) (explaining that where the plaintiff was uncooperative and aggressive during arrest, officer's use of a leg sweep to terminate the situation was reasonable).

In his Response in Opposition, Plaintiff asserts that Defendants "pinned [Plaintiff] down on the ground touching places [they] shouldn't have"; he sustained a broken right shoulder and broken vertebrae in his neck; Branson sucker punched him; Branson choked him, injuring his neck; he was slammed into the police vehicle; and Defendants kicked him while he was down on the ground. ECF No. 54. Plaintiff presents no evidence to support these assertions. There is no dispute that Defendants used a minimal degree of force, including a leg sweep maneuver, to take Plaintiff to the ground and then restrain him in handcuffs. However, there is no evidence in the record showing that either officer sucker punched, choked, kicked, or inappropriately touched Plaintiff. And, the video from the BWCs contradicts Plaintiff's assertions.[5] "Although the Court must draw all reasonable inferences to favor the nonmoving party, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Est. of Taylor v. Baltimore Cnty.*, C/A No. RDB-22-cv-2459,

---

[5] "In cases involving inconsistent witness testimony, unchallenged video evidence allows a court to accept the facts portrayed in the video for purposes of ruling on a motion for summary judgment." *Thrower v. Kinnee*, C/A No. 0:14-cv-2791-JMC-PJG, 2015 WL 2338072, at *4 (D.S.C. Apr. 13, 2015); *see also Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (stating that when a video "quite clearly contradicts" a version of the story so that "no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape."). In this case, the video "clearly contradicts" any assertion that Plaintiff was not disobeying commands or was not resisting arrest by struggling against efforts to place him in handcuffs.

2025 WL 385774, at *6 (D. Md. Feb. 3, 2025) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

"Thus, at the summary judgment stage, video evidence can only discredit a nonmovant's factual

assertions if the video 'blatantly' contradicts the nonmovant's position." *Simmons v. Whitaker*,

106 F.4th 379, 385 (4th Cir. 2024) (quoting *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008)).

Here, the BWC corroborates Defendants' version of events and blatantly contradicts Plaintiff's

assertions.

Similarly, contrary to Plaintiff's cursory allegations in the Complaint and arguments in his

briefs, there is no evidence in the record showing that Plaintiff suffered any significant injury,

including a broken shoulder or arm or any neck injury, let alone a broken vertebrae in his neck.

Although Plaintiff requested to be taken to the hospital at the time of his arrest—and was taken to

the hospital by the police—the records from that hospital visit showed no emergent injuries. As

to the "History of Present Illness," the provider notes from Spartanburg Medical Center dated

October 18, 2023, explain as follows:

> [Plaintiff] is a 34 y.o. male presenting to the ED in police custody
> for medical clearance. Police attempted to pull the patient over, and
> he resisted arrest. Patient brought in to the ED complaining of neck
> pain, wrist pain, and bilateral shoulder pain. Notes that he had
> surgery on his right shoulder in February.

ECF No. 49-8 (Plaintiff's medical records filed under seal). A physical exam showed

"[t]enderness over right shoulder but no deformities." *Id*. X-rays were taken of Plaintiff's

shoulders, which showed no acute fracture. *Id*. The notes explain as follows with regard to

"Medical Decision Making":

> 34-year-old man brought in for medical clearance by the police after
> he was arrested today. Apparently there was a bit of a scuffle as he
> was resisting arrest and was brought in in handcuffs complaining
> about pain in his shoulders primarily. Does have a history of right
> rotator cuff repair so I obtained plain film images of his shoulders.
> There is evidence of chronic impaction fracture as well as previous

18

> surgical repair but no acute fractures or dislocations. I do not think the patient requires additional imaging studies at this time, he is awake and alert, no signs of head injury or deficits. Patient will be released to police custody. I discussed with the patient that if he had persistent discomfort in that shoulder after they release him from his [cuffs] that he should follow-up with his orthopedic surgeon to make sure there [has] not been a new injury from today's events.

*Id.* Plaintiff returned to the hospital on October 20, 2023, complaining of left shoulder pain, wrist pain, neck pain, and a sprained right ankle, all as a result of the altercation with police. *Id.* X-rays were taken of Plaintiff's cervical spine, ankle, and wrist. *Id.* All x-rays were normal. *Id.*

Plaintiff has not pointed to any evidence in the record showing that he sustained an injury as a result of the events during his arrest. On the other hand, records from Plaintiff's two hospital visits (one the day of the arrest and one a few days later), that included imaging of his shoulders, spine, wrist, and ankle, showed no injuries. Plaintiff's cursory assertions that Defendants used force to break Plaintiff's shoulder, arm, and vertebrae are wholly unsupported by the record evidence. Although not specified in *Graham*, courts have found that "the extent of the plaintiff's injuries is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527-8 (4th Cir. 2003); *see also Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Pressley v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987). There is no medical evidence before the Court regarding a severe or debilitating wound, the need for surgery, any long-term or lasting injury, or any treatment other than pain medicine. *Hendricks v. Greenville Cnty.*, C/A No. 6:24-cv-03587-JDA-WSB, 2026 WL 228887, at *7 (D.S.C. Jan. 9, 2026) (collecting cases noting that absence of injury counters against finding of excessive force), *R&R adopted by* 2026 WL 228002 (D.S.C. Jan. 28, 2026).

The affidavits and the BWC establish that the force used was applied in a good-faith effort to subdue, restrain, and arrest Plaintiff. Once Plaintiff was subdued, no additional force was used, and the forced used in subduing Plaintiff was proportional, it was no greater than necessary to

19

subdue Plaintiff, and it was not done to punish Plaintiff but to subdue him.  Therefore, Defendants are entitled to summary judgment as to Plaintiff's excessive force claim.

### Qualified Immunity

Defendants argue that they are both entitled to qualified immunity.  ECF No. 49-1 at 8–11. Qualified immunity shields government officials from liability unless "the official violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A right is clearly established when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (quotations and brackets omitted).  Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id*. at 743.  In this case, Plaintiff has not established a constitutional violation, nor has he established that every reasonable official would have understood that Defendants' actions violated a constitutional right.  Defendants are therefore both entitled to qualified immunity.

### Younger Abstention

Finally, the Court notes that, to the extent this action is an attempt by Plaintiff to have this Court interfere with his pending state court proceedings, any such claims are without merit. Plaintiff's Motions for Summary Judgment both state that there was no "probable cause for the search, seizure, or harassment" by Defendants and that the search and seizure were therefore illegal.  ECF Nos. 46; 47.  Plaintiff's Second MSJ states "I'm entitled to relief without probable cause tickets." ECF No. 47.  It is unclear what "relief" Plaintiff is seeking based on his contention that there was no probable cause.  However, whatever relief Plaintiff is seeking related to his

20

pending charges in the state court, this Court is not permitted to consider such arguments or grant Plaintiff's requested relief under the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971). Granting Plaintiff's requested relief would require this Court to interfere with or enjoin a pending state court criminal proceeding against Plaintiff. Because a federal court may not award relief that would affect pending state proceedings absent extraordinary circumstances, this Court should abstain from interfering with the state court proceedings.

In *Younger*, the Supreme Court of the United States of America held that a federal court should not equitably interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996) (internal quotation marks omitted). The *Younger* Court noted that courts of equity should not act unless the moving party has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. *Younger*, 401 U.S. at 43–44; *see Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (explaining the circumstances when *Younger* abstention is appropriate).

From *Younger* and its progeny, the Fourth Circuit has culled the following test to determine when abstention is appropriate: "[1] there are ongoing state judicial proceedings; [2] the proceedings implicate important state interests; and [3] there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994) (citation omitted). Plaintiff is involved in ongoing state criminal proceedings related to the claims at issue in this case, and Plaintiff asks this Court to award relief—i.e., suppress evidence—for alleged constitutional violations; thus, the first element is satisfied. The second element is satisfied because the Supreme Court has explained "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering

21

equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).  The third element is also satisfied, as the Supreme Court has noted "that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Gilliam*, 75 F.3d at 903 (citation omitted).

A ruling in Plaintiff's favor in this case—as to any claims premised on his underlying pending criminal proceedings—would call into question the validity of the state court criminal proceedings against him and would significantly interfere with those ongoing state proceedings. *See Younger*, 401 U.S. at 43–45; *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 52 (4th Cir. 1989) ("[F]ederal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, 'whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.'") (citation omitted); *Washington v. Tilton*, C/A No. 2:10-cv-997-HFF-RSC, 2010 WL 2084383, at *1 (D.S.C. May 19, 2010).  Plaintiff is able to challenge the evidence against him in the state court proceedings.  As such, to the extent any of Plaintiff's claims are premised on his contention that the Court should interfere with his pending state court criminal proceedings, all such claims are without merit and subject to dismissal.

**Plaintiff's Motions for Summary Judgment**

As noted, Plaintiff has filed two Motions for Summary Judgment.  ECF No. 46; 47.  The two Motions are nearly identical.  The arguments presented in both of Plaintiff's Motions are without merit, and they should both be denied.

Plaintiff's First Motion for Summary Judgment argues he is entitled to summary judgment because Branson and White used excessive force by kicking, punching, improperly touching, choking, slamming, and pointing a loaded gun at Plaintiff.  ECF No. 46.  Plaintiff asserts Branson

22

and White injured him, "sending him to the hospital multiple times." *Id*. Plaintiff contends he was "not violent to the deputies" and "only asked why they were harassing me." *Id*. Plaintiff argues there was no probable cause for the search, seizure, or harassment. *Id*. According to Plaintiff, he "pulled over in a safe place only two minutes away from the store where I was harassed." *Id*. Plaintiff's Second Motion for Summary Judgment makes these same assertions. ECF No. 47. Plaintiff has not submitted any evidence or documents, nor referenced any, in support of his two Motions.

Plaintiff's cursory arguments are insufficient to demonstrate that Plaintiff is entitled to summary judgment, particularly where Plaintiff's version of events is flatly contradicted by the objective video evidence. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Further, Plaintiff's two Motions are insufficient to create a dispute of any material fact such that Defendants are not entitled to summary judgment as to their own Motion. *Causey v. Palmer*, C/A No. 4:20-cv-01724-JD-TER, 2021 WL 5310776, at *6 (D.S.C. Nov. 15, 2021) ("To survive summary judgment, Plaintiff must do more than rest on the allegations in his complaint."). As explained above, the evidence in the record demonstrates that Plaintiff failed to stop when White attempted to conduct a lawful traffic stop and instead fled at a high rate of speed. Plaintiff then repeatedly refused to comply with Branson's commands and resisted arrest. Defendants used limited force to take Plaintiff to the ground and subdue him. The force used was proportionate to Plaintiff's resistance and ceased once Plaintiff was restrained. Under the *Graham* factors, Defendants' use of force was not excessive. Plaintiff has failed to present evidence to the

23

contrary. Therefore, Plaintiff's Motions for Summary Judgment (ECF Nos. 46; 47) should both be denied.

**Plaintiff's Motion to Amend/Correct the Complaint**

Plaintiff has filed a Motion to Amend/Correct the Complaint. ECF No. 61. Plaintiff's Motion explains that he is seeking to add the following Defendants: the County, the City, Wright, Jennifer Wells ("Wells"), Christopher Grubbs ("Grubbs"), and Hayes. *Id*. at 1. Plaintiff contends these individuals and entities "all have conspired in acts of misconduct" to violate Plaintiff's constitutional rights including claims related to a fast and speedy trial, due process violations, equal protection violations, illegal search and seizure, racial profiling, harassment, and denial of right to counsel and effective assistance of counsel. *Id*. Plaintiff has filed a proposed Amended Complaint, which is comprised of two hand-written pages. ECF No. 61-1. The proposed Amended Complaint presents allegations similar to those presented in the original Complaint, as summarized above, as well as conclusory assertions against the "new" Defendants in line with the summary provided in the Motion as described above. *Id*. Plaintiff also refers to case number 25-cv-1073 and presents arguments and allegations similar to those asserted in that case. *Id*.

Plaintiff's Motion should be denied. As an initial matter, Plaintiff's Motion fails to meet the liberal standard for amendment under Rule 15 of the Federal Rules of Civil Procedure. The Fourth Circuit has explained that "undue delay 'accompanied by futility or prejudice to the non-movant' is 'a sufficient reason' for denying leave to amend under Rule 15(a)." *Naden v. Saga Software, Inc.*, 11 F. App'x 381, 382 (4th Cir. 2001) (quoting *HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross,* 101 F.3d 1005, 1010 (4th Cir. 1996)). Here, there is undue delay and prejudice to Defendants coupled with futility (as discussed below). Plaintiff's Motion was filed

24

after the close of discovery and after both parties had filed and fully briefed their summary judgment motions.

Next, the Court notes that Plaintiff's Motion is an improper attempt to add Defendants that have already been dismissed from this action. Plaintiff's Complaint named the following Defendants: Branson, White, Wright, the Sheriff's Office, the City, the County, the State, the Detention Center, and Judge Hayes. ECF No. 1. By Order dated October 14, 2025, the Sheriff's Office, the City, the County, the State, the Detention Center, and Judge Hayes were all dismissed from this action. ECF No. 26 (adopting the Report and Recommendation at ECF No. 12). Plaintiff's attempt at this time to add these same dismissed Defendants back into the case is without merit for the reasons the Court already dismissed them, as summarized below. *See Brewton v. Branson*, C/A No. 7:25-cv-10435-RMG, 2025 WL 2911016, at *1 (D.S.C. Oct. 14, 2025) (dismissing the County, the City, Wright, and Judge Hayes from this action). The proposed Amended Complaint fails to establish a claim against the County because Plaintiff has not plausibly alleged any custom or practice of the County which relates to his claims of deliberate indifference or excessive force. *Id*. The proposed Amended Complaint fails to establish a claim against the City because Plaintiff fails to identify any City employee involved in the incidents that give rise to his claims. *Id.*; *see also Brewton v. Wright*, C/A No. 0:25-cv-1073-RMG, 2025 WL 1232495, at *2 (D.S.C. Apr. 29, 2025) (summarily dismissing the City of Spartanburg "because Plaintiff's complaint fails to identify any City employee involved in the incidents that give rise to his claims"). The proposed Amended Complaint fails to establish a claim against Wright because Plaintiff's factual allegations fail to set forth a plausible claim against him individually or on the basis of supervisory liability. *Brewton*, 2025 WL 2911016, at *1. The proposed Amended Complaint fails to establish a claim against Judge Hayes because he is entitled to absolute

immunity and therefore subject to dismissal. *Id*. at 2; *see also Mireless v. Waco*, 502 U.S. 9 (1991) (explaining state judges are immune from liability for acts committed while presiding over their court). Accordingly, amendment would be futile as the Court previously dismissed these same Defendants and/or they are entitled to immunity or are not proper parties. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards.").

The proposed Amended Complaint also attempts to name as new Defendants Plaintiff's present and/or former defense counsel, Wells and Grubbs. ECF No. 61-1 at 2. Plaintiff's attorneys are not proper parties as they are not state actors. To state a § 1983 claim, Plaintiff must allege that he was deprived of a constitutional right by a person acting under the color of state law. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Plaintiff has not alleged facts showing that his attorneys—Wells and Grubbs—are state actors acting under color of law. *Martin v. Brackett*, C/A No. 9:09-cv-792-RBH, 2009 WL 3836123, at *1 (D.S.C. Nov. 13, 2009) ("Attorneys for criminal defendants generally do not act under color of state law when performing traditional functions as counsel.").

"[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 317 (1981); *see also Hall v. Quillen*, 631 F.2d 1154, 1156 (4th Cir. 1980) (concluding a court-appointed attorney was entitled to dismissal of the plaintiff's § 1983 claim against him for want of state action). Plaintiff has not made allegations to plausibly show that Wells and Grubbs exceeded the "traditional functions as counsel." *Polk Cnty.*, 454 U.S. at 325; *see also Trexler v. Giese*, C/A No. 3:09-cv-144-CMC-PJG, 2010 WL 104599, at *3 (D.S.C. Jan. 7, 2010) (finding attorney was entitled to summary dismissal in § 1983 action where attorney's

representation in the state criminal case fell "squarely within the parameters of his legal representation" although the plaintiff was unhappy with the manner in which the attorney represented her). Accordingly, Plaintiff cannot assert claims against Wells and Grubbs as they are not proper parties in this § 1983 action. *See Curry v. South Carolina*, 518 F. Supp. 2d 661, 667 (D.S.C. 2007) (explaining public defenders are not state actors under § 1983 and thus entitled to dismissal). Plaintiff's proposed amendment would thus be futile.

Finally, Plaintiff asserts "new" claims that are essentially asking this Court to intervene in Plaintiff's pending state court criminal cases, which is not permitted under the *Younger* abstention doctrine, as discussed above. Granting Plaintiff's requested relief would require this Court to interfere with or enjoin a pending state court criminal proceeding against Plaintiff. Because a federal court may not award relief that would affect pending state proceedings absent extraordinary circumstances, this Court should abstain from interfering with the state court proceedings. Plaintiff is able to challenge the evidence against him in the state court proceedings. As such, Plaintiff's Motion to Amend, which seeks to add claims related to his pending state court criminal proceedings should be denied as the Court should abstain from considering such claims under *Younger*.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that both of Plaintiff's Motions for Summary Judgment (ECF Nos. 46; 47) be **DENIED**, that Defendants' Motion for Summary Judgment (ECF No. 49) be **GRANTED**, and that Plaintiff's Motion to Amend/Correct (ECF No. 61) be **DENIED**.

**IT IS SO RECOMMENDED**.

s/William S. Brown
United States Magistrate Judge

March 13, 2026
Greenville, South Carolina

*The parties' attention is directed to the important notice on the next page.*

28

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).